IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **IPRO NETWORK, LLC,** | } |
| *Plaintiff,* | } |
| v. | } CIVIL NO. 4:18-cv-00249-h |
| **FINTACT SOLUTIONS GROUP, LLC,** | } JUDGE SIM LAKE |
| *Defendant.* | } |

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) —AND— MEMORANDUM IN SUPPORT

Fintact Solutions Group, LLC ("Fintact") hereby moves to dismiss IPro Network, LLC's ("IPro") First Amended Complaint ("Complaint") (Dkt. 8) for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). In the alternative, Fintact moves for partial dismissal of the Complaint based on IPro's failure to state claims on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### PRELIMINARY STATEMENT

After failing to plead requisite facts regarding the citizenship of the plaintiff and defendant LLC members in its original complaint, IPro now pleads erroneous facts. Contrary to allegations in the amended Complaint, Matthew Lopez, one of the members of Fintact, is a citizen of California, not Arizona. Because the sole member of IPro is also a citizen of California, complete diversity is lacking, and this action must be dismissed for lack of subject matter jurisdiction.

Alternatively, even if this Court finds that it has subject matter jurisdiction over this dispute, it should still partially dismiss the Complaint for failure to state claims on which relief can be granted. IPro asserts three causes of action: breach of contract, negligence, and conversion. But the negligence and conversion claims are based solely on Fintact's alleged failure to perform duties

created by the parties' contract. These claims are therefore barred by Texas's economic loss rule. Further, IPro's core breach of contract claim—that Fintact overcharged on an agreed commission—is contrary to the express terms of the alleged agreement, which provides for the precise commission IPro says Fintact charged. If the Complaint survives at all, it therefore does so only with respect to a small portion of the breach of contract claim.

Fintact respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction or, in the alternative, grant the partial motion to dismiss for failure to state a claim, as further set forth below.

## FACTUAL BACKGROUND

**A.      Contrary to IPro's Allegations, There Are California Citizens on Both Sides of This Dispute.**

In its original complaint, IPro alleged diversity jurisdiction based on the citizenship of the plaintiff and defendant LLCs, without even mentioning the members of the respective LLCs. [Dkt. 1] This Court dismissed the complaint *sua sponte* because "these allegations [were] facially insufficient to establish the existence of diversity jurisdiction." [Dkt. 7]

IPro still seeks to establish this Court's jurisdiction based solely on diversity of citizenship between the parties. [Dkt. 8, Complaint ¶¶ 4-6] IPro now pleads that its sole member, Daniel Pacheco, "is a citizen of the state of California." [Complaint ¶ 1] And IPro alleges that that the two members of defendant Fintact, Charlotte Mangan and Matthew Lopez, are citizens of Texas and Arizona, respectively. [*Id.* ¶ 2] But this is wrong; Lopez is a citizen of California, and he was a citizen of California at the time IPro filed the Complaint. [Ex. 1, Declaration of Matthew Lopez ("Lopez Decl.") ¶¶ 1-8]

Lopez is a fifth-generation Californian. [*Id.* ¶ 3] He was born and raised in California, and he has lived most of his life in the State. [*Id.*] In late 2013, he moved to Arizona for a period of time to take advantage of Arizona's lower cost of living, but he always intended to return to California, and

he subsequently did return. [*Id.* ¶ 4] In September 2017, he signed a lease in Moss Beach, California, and he moved back there full time on September 9. [*Id.* ¶ 5] Lopez paid 2017 taxes in California, and he holds a bank account at Alliance Bank in California. [*Id.* ¶ 7] He has been involved in the California community his entire life, including through charity work and a lifetime membership in the Native Sons of the Golden West, a fraternal organization limited to native-born Californians. [*Id.* ¶ 8]

Lopez does not own or lease property in Arizona, and he has not even visited Arizona since a one-day trip there on January 26, 2018. [*Id.* ¶ 6] IPro did not commence this action until January 26, and did not file its amended Complaint until February 22.

B.  **IPro Admits This is a Breach of Contract Dispute, But Pleads Two Tort Claims Based on the Same Facts.[1]**

IPro is a "multi-level marketing company" that compares itself to Amway and Herbalife. [Complaint ¶ 7] Fintact "is a merchant processing company." [*Id.* ¶ 10] In approximately December 2016, IPro and Fintact entered into a contract for Fintact to "provide its services to IPro in exchange for a fee." [*Id.* ¶ 11] Under the agreement, when an IPro distributor sold IPro products, the proceeds were submitted to Fintact, which would disburse commissions to the distributors and "deliver the balance" to IPro, all as instructed by IPro. [*Id.*] IPro alleges that the parties agreed "[v]ia email ... that Fintact would charge a 2% processing fee," but Fintact instead "began charging IPro a 4% processing fee." [*Id.* ¶ 14, 21] However, the email referenced in the Complaint and relied on by IPro—but conspicuously not quoted in or attached to the Complaint—provides unequivocally for Fintact to charge a 4% commission, with 2% allocated to IPro and 2% allocated to IPro's customers. [Ex. 2 at p. 3]

---

[1] Although Fintact strongly disputes and denies many of IPro's allegations, the following factual recitation is derived from the allegations in the Complaint, as is required at the pleading stage.

Oddly, although IPro pleads that all of Fintact's duties and obligations arose from a contract between the parties, IPro also alleges that Fintact's alleged conduct was "negligen[t]." [*Id.* ¶¶ 15, 26-29] IPro further alleges that Fintact tortiously converted funds to which IPro is entitled. [*Id.* ¶¶ 30-36]

**ARGUMENT**

**I. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE DISPUTE BECAUSE THERE IS NOT COMPLETE DIVERSITY BETWEEN THE PARTIES.**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The party seeking the federal forum bears the burden of establishing subject matter jurisdiction." *Guardado v. Palmore*, 2016 WL 9308318, at *2 (N.D. Tex. October 25, 2016). IPro alleges that this Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. But diversity jurisdiction exists only if there is "complete diversity—i.e., if "all persons on one side of the controversy [are] citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quotation marks omitted). The parties on both sides of this controversy are LLCs, and "the citizenship of a LLC is determined by the citizenship of all its members." *Id.* at 1080.

For diversity of citizenship to exist, "the diverse citizenship among adverse parties must be present at the time the complaint is filed." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974); *Grupo Dataflux v. Atlas Global Group, L.P.* 124 S. Ct. 1920, 1923-24 (2004) (same). Further, "[f]or diversity purposes, citizenship means domicile," and "a person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas*, 489 F.2d at 1399. To determine domicile, courts consider declarations and "look to objective indicia of intent like participation in all phases of community life and governmental activities," as well as "residence and employment." *Appliance Alliance, LLC v. Sears*

*Home Appliance Showrooms, LLC*, 2015 WL 9319179, at *2 (N.D. Tex. December 23, 2015). Under this test, there can be no question here that diversity of citizenship is lacking.

It is undisputed that the sole member of IPro, Daniel Pacheco, is a citizen of California. [Complaint ¶ 4] And contrary to IPro's allegations, Matthew Lopez is also a citizen of California. Lopez is a California native who has lived in the state most of his life. [Ex. 1, Lopez Decl. ¶ 3] Even when he briefly resided in Arizona, he always intended to return to California. [*Id.* ¶ 4] Consistent with this intent, he leased a California residence in September 2017 and moved back to Moss Beach, California full time on September 9. [*Id.* ¶ 5] He has not even stepped foot in Arizona since a one-day trip there in late January 2018. [*Id.* ¶ 6] All indicia of citizenship confirm that Lopez was a California citizen when IPro filed its January 26, 2018 complaint. *See Mas*, 489 F.2d at 1400 (living in Louisiana for period of time did not disturb Mississippi domicile where individual "lacked the requisite intention to remain" in Louisiana).

Because parties on both sides of the controversy are California citizens, there is no complete diversity and this Court lacks subject matter jurisdiction over the controversy. *E.g., IGPs Co., LLC v. Nat'l Wooden Pallet & Container Ass'n*, 2011 WL 4526087, at *3 (N.D. Tex. Sept. 28, 2011) (finding lack of jurisdiction *sua sponte* where party asserting jurisdiction failed to carry burden); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## II. IPRO FAILS TO STATE CLAIMS ON WHICH RELIEF CAN BE GRANTED.

Even if the Court determines that Mr. Lopez *was* a citizen of Arizona at the time of the Complaint, and thus that the Court has subject matter jurisdiction over this action, the Complaint must still be dismissed nearly in full for failure to state claims on which relief can be granted. To avoid dismissal at the pleading stage, IPro must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must give

rise to a "reasonable inference that the defendant is liable for the misconduct alleged," not merely plead facts "consistent with" the alleged liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Fintact's motion to dismiss must also be granted if "the complaint lacks a cognizable legal theory." *Utex Communications Corp. v. Public Utility Com'n of Tex.*, 514 F.Supp.2d 963, 968 (W.D. Tex. 2007).

Here, IPro's two tort claims (Counts II and III) are not cognizable because they are based on Fintact's alleged failure to perform duties created by contract, and are therefore barred by the economic loss rule. And IPro's breach of contract claim (Count I) must be dismissed, at least in part, because IPro has mischaracterized the contract on which the claim is based.

**A.**     **The Negligence (Count II) and Conversion (Count III) Claims Are Barred By the Economic Loss Rule.**

"Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the same conduct and the same kind of harm or loss." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.* 787 F.3d 716, 725 (5th Cir. 2015). The so-called "economic loss rule flows from this distinction, and it generally prohibits a plaintiff from using a tort cause of action as a vehicle to impose liability for a claim based in contract." *Id.* "The Texas Supreme Court has unequivocally adopted a broad interpretation of the economic loss rule." *Id.*

In Texas, "[t]he economic loss rule generally bars a tort claim when no factual basis for the tort claim would exist had the defendant complied with the contract." *Id.; see also, e.g., S.W. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991) (party cannot recover economic damages in tort based on failure to perform a duty that is the "subject of a contract"); *Utex*, 514 F.Supp. at 972 ("A defendant's conduct that breaches an agreement between the parties and does not breach an affirmative duty imposed outside the contract is not actionable in tort."). Here, IPro alleges that Fintact's obligations to it are governed by an "agreement whereby Fintact would provide its services

to IPro in exchange for a fee." [Complaint ¶ 11] Under the agreement, IPro says Fintact had several duties and obligations: Fintact was to "reconcile ... payments" from customers; "disburse commissions to IPro's distributors"; "maintain certain accounting journals"; "submit all accounting records to IPro for its review each month"; and return funds to IPro upon request. [*Id.* ¶¶ 11, 12]

IPro then alleges two tort claims based on the same conduct. First, IPro pleads a claim for negligence based solely on Fintact's alleged failure "to provide true and accurate accounting records" (*Id.* ¶ 28)—the precise duty on which the breach of contract claim is based. This claim is therefore barred by the economic loss rule. *E.g., S.W. Bell*, 809 S.W.2d at 495 (negligence claim based on duty that "arose solely from the contract" precluded by economic loss rule).

Second, IPro pleads a claim for conversion based solely on Fintact's alleged failure to return money IPro claims it is owed. [Complaint ¶ 35] A conversion claims that "stem[s] from violations of contractual provisions" is also barred by the economic loss rule. *Lincoln Gen.*, 787 F.3d at 726; *see also, e.g., Dhanani v. Giles*, 2008 WL 2210004, at *4 (Tex. App.—Waco July 8, 2008, pet. denied) (cannot bring claim "based on the same factual scenario" as breach of contract claim); *Felchak v. JP Morgan Chase Bank*, 2013 WL 1966972, *4 (S.D. Tex. May 10, 2013) (same). As in *Lincoln General*, "the factual predicate for [the] conversion claim would collapse" if Fintact had "calculated the commission and transferred the [property at issue]" as alleged to be "required by the contract[]." 787 F.3d at 726; *Dhanani*, 2008 WL 2210004 at *4 (assertions that defendant "fail[ed] to make payments" and "assumed dominion and control over Plaintiffs' property ... amount to nothing more than a complaint regarding [defendant's] failure to comply with the agreement") (quotation marks omitted). The economic loss rule therefore "prevents [IPro] from bringing" this claim. *Lincoln General*, 787 F.3d at 726.

**B.     The Breach of Contract Claim (Count I) Is, In Part, Implausible on Its Face.**

A breach of contract claim must be dismissed where it "falls short of the plausibility pleading standard articulated in *Twombly* and *Iqbal*." *Bayco Prod., Inc. v. Lynch*, 2011 WL 1602571, at *6 (N.D. Tex. Apr. 28, 2011) (dismissal required where "no factual allegations ... support a reasonable inference" of breach); *see also*, e.g., *Lycoming Engines v. Superior Air Parts, Inc.*, 2014 WL 1976757, at *10 (N.D. Tex. May 15, 2014) ("unwarranted deductions, labels, and conclusory statements 'will not do' to satisfy the pleading standards of Rule 12(b)(6)").

Although IPro alleges an "oral agreement," it then admits that the commission charged by Fintact is memorialized in a February 9, 2017 email. [Complaint ¶ 21] While a 12(b)(6) motion is generally limited "to the contents of the pleadings," the Court may "consider documents attached to ... a motion to dismiss ... when the documents are referred to in the pleadings and are central to plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). "[W]hen a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919 (N.D. Tex. 2014); *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) ("because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss").

Here, IPro's allegation that Fintact was entitled to only a 2% processing fee, but charged a 4% processing fee, is central to its breach of contract claim. [Complaint ¶ 21] But the February 13, 2017 email alleged in the complaint to contain the contract contradicts that assertion. The email unequivocally states that Fintact is entitled to a "2% processing fee on the backside (assigned to IPN)" and a "2% processing fee on the frontside (assigned to Customer)"—for a total 4% commission. [Ex. 2 at p. 3]

"[A] court is not to strain to find inferences favorable to the plaintiff." *Lycoming Engines*, 2014 WL 1976757 at \*7. And where a plaintiff "relies on documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *E.g., N.P.V. Realty Corp. v. Nationwide Mutual Ins. Co.*, 2011 WL 4948542, at \*2-3 (M.D. Fla. Oct. 17, 2011) (granting motion to dismiss where language of insurance policy "render[ed] Plaintiff's claim implausible"). Since IPro "alleges an oral agreement that, on the one hand incorporates terms from the" February 13, 2017 email, "but on the other, directly contradict[s] those terms, it cannot state a 'plausible' claim for relief based on reliance on the contradictory oral statements." *Digital Spectrum Solutions v. Eastman Kodak Co.*, 2008 WL 11340372, at \*5 (C.D. Cal. May 2, 2008); *see also, e.g., Spinelli v. National Football League*, 96 F. Supp. 3d 81, 132 (S.D.N.Y. 2015) (dismissing breach of contract claim where "conclusory allegations as to the terms of the contracts allegedly breached by [defendant] are contradicted by the plain language of their own" agreement). Because the plain language of the February 2017 email establishes a 4% commission, the breach of contract claim must be dismissed as to this portion of the claim. *See, e.g., U.S. ex rel. Coppock v. Northrup Grumman Corp.*, 2003 WL 21730668, at \*13 (granting motion to dismiss portions of causes of action without dismissing claims in full) (N.D. Tex. July 22, 2003).

## CONCLUSION

This action must be dismissed for lack of subject matter jurisdiction because there are California citizens on both sides of the dispute and complete diversity is therefore lacking. In the alternative, the claims for negligence and conversion must be dismissed because they are barred by the economic loss rule, and the breach of contract claim must be dismissed in part because IPro's allegations are inconsistent with the terms of the agreement on which the claim is based.

| | |
|---|---|
| Dated: June 15, 2018 | Respectfully submitted,<br><br>*/s/ Jean-Jacques Cabou*<br>**Jean-Jacques Cabou**<br>***Attorney-In-Charge***<br>AZ Bar No. 022835<br>Admitted *Pro Hac Vice*<br>jcabou@perkinscoie.com<br><br>Clinten N. Garrett<br>AZ Bar No. 022457<br>Admitted *Pro Hac Vice*<br>cngarrett@perkinscoie.com<br><br>Alexis E. Danneman<br>AZ Bar No. 030478<br>Admitted *Pro Hac Vice*<br>adanneman@perkinscoie.com<br><br>PERKINS COIE LLP (Phoenix)<br>2901 North Central Avenue, Suite 2000<br>Phoenix, AZ 85012-2788<br>Ph: 602.351.8003<br><br>Hayden M. Schottlaender<br>TX Bar No. 24098391<br>SDTX Bar No. 2800728<br>hschottlaender@perkinscoie.com<br><br>PERKINS COIE LLP (Dallas)<br>500 N. Akard St., Ste. 3300<br>Dallas, TX  75201<br>Ph: 214-965-7700<br>DocketDAL@perkinscoie.com<br><br>*Attorneys for Defendant*<br>*Fintact Solutions Group, LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of June 2018, I electronically filed the forgoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to such Notice as service of the document by electronic means.

*/s/ Hayden M. Schottlaender*
Hayden M. Schottlaender